**UNITED STATES of America**

v.

**Christopher E. GRIFFIN.**

**Crim. No. 85–0293.**

United States District Court,
District of Columbia.

Aug. 26, 1986.

Darryl W. Jackson, Asst. U.S. Atty., Washington, D.C., for U.S.

G. Allen Dale, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

The government has moved the Court to find the defendant, Christopher E. Griffin, guilty of civil contempt for lying under oath and refusing to obey the Court's order to pay restitution amounting to $62,500 because he did not immediately pay partial restitution of $5,400, which defendant and his attorney represented to the Court would be paid at sentencing on February 27, 1986. After careful consideration of the government's memorandum, defendant's response thereto and the record, the Court finds the defendant guilty of civil contempt and orders that the $5,400 paid into the registry of the Court be paid to the Attorney General for the reasons set forth below.

## II. BACKGROUND

On January 23, 1986, defendant pleaded guilty to mail fraud, 18 U.S.C. § 1341. On February 27, 1986 defendant was sentenced to five years imprisonment and ordered to pay restitution in the amount of $62,500. At the February 27, 1986 sentencing hearing, prior to the imposition of the sentence, defendant and his counsel, Mr. Halleck, made several representations to the Court.

Mr. Halleck told the Court that he had in his possession $5,400 that he intended to give to the victim that day, February 27th, to make partial restitution. (Sentencing Transcript 5, 17, 23 & 48) (hereinafter "S"). Mr. Halleck also advised the Court that defendant was making an effort to recover any additional funds that were available to him in order to make full restitution as quickly as possible. (S 6, 22–24 & 48).

The defendant also testified that he intended to make restitution. Specifically, the defendant claimed that he sent to his brother approximately $30,000 obtained from the victim and that his brother used the money to purchase an automobile. (S 9–10, 25 & 36). Defendant said that he was trying to get the money back to pay restitution to the victim, but that his brother had wrecked the automobile he purchased with the money and, therefore, he had to wait for his brother to receive the insurance proceeds. (S 9–10, 25 & 36). The defendant also represented to the Court that the $5,400 in Mr. Halleck's possession had been sent to him by his brother and that he has banking records to prove that his brother was the source of the money. (S 36).

After the Court sentenced defendant, ordering him to pay restitution in the amount of $62,500, Mr. Halleck refused to pay over the $5,400, notwithstanding his prior representations that he intended to use the money to pay restitution to the victim on the day of sentencing, February 27, 1986. Consequently, the Court issued an Order pursuant to the government's motion on March 6, 1986, demanding "that the defendant make immediate payment of the sum of five thousand four hundred dollars ($5,400) to the Attorney General in partial restitution to the victim in the instant case, or, in the alternative, that the defendant appear before this Court with counsel, Charles Halleck, Esq., on the 10th day of March, 1986, at 2:00 P.M. to show cause why the defendant should not be held in civil contempt...." Order (filed Mar. 6, 1986).

The defendant complied with the order, choosing to appear before this Court with Mr. Halleck on March 10, 1986 at which time the Court took testimony from two

witnesses. Subsequently, the government moved the Court to continue the show cause hearings, which the Court granted on April 4, 1986. Then, pursuant to a motion by the defendant, the Court ordered on May 19, 1986 that the $5,400 be placed in the registry of the Court. The money was so deposited and remains there pending further instructions from the Court.

On May 22, 1986, the show cause hearing was continued as requested by the government. At the hearing Ms. Joyce Goche testified that she was the source of the $5,400. (T 14–20). The defendant's brother, Marcus Griffin, testified that he was *not* the source of the money. (T 50–52). Marcus Griffin also denied that he used the $30,000–plus that he received from the defendant to purchase an automobile, (T 41, 43 & 50), but that he gave the money to a woman unknown to him per defendant's instructions. (T 32–41). Again, the Court took the motion for contempt under advisement to evaluate this new evidence. To this date, no money has been paid to satisfy the Court's order to make restitution.

### III. THE DEFENDANT IS GUILTY OF CONTEMPT

A. *The Defendant Made Factual Misrepresentations to the Court and, Therefore, Is in Contempt of Court for Obstructing the Administration of Justice*

Pursuant to 18 U.S.C. § 401(1), this Court has the "power to punish by fine or imprisonment, at its discretion, such contempt of its authority and none other, as 1) Misbehavior of any person in its presence ... as to obstruct the administration of justice."

In the present case, the government has accused the defendant of lying. Based on the record, particularly the testimony of Ms. Goche and Marcus Griffin, the Court finds that the defendant lied on at least two occasions. First, the defendant stated that he received the $5,400 that Mr. Halleck waved before the Court from his brother. (S 36). Defendant's testimony, however, is refuted by both his brother Marcus Griffin and his friend Ms. Goche,

an employee of the D.C. public schools with whom the defendant was living during the time between his release from federal prison for an unrelated offense and the sentencing in this case. Marcus Griffin testified that he was not the source of the $5,400. (T 50–52). Ms. Goche also testified that Marcus Griffin was not the source of the money because she had given the $5,400 to the defendant. Secondly, defendant claimed that his brother, Marcus Griffin, used $34,000 given to him by the defendant to buy an automobile. (S 9–10, 25 & 36). Marcus Griffin's testimony, however, directly contradicts defendant's testimony. Marcus Griffin stated that he never bought an automobile with the $34,000, (T 41, 43 & 50), but that the money was given to an unnamed woman on a street in cash at the defendant's request. (T 32–41).

■ Based on the whole record herein and its first hand observation and judgment as to the credibility of the witnesses, including the defendant, the Court finds that the defendant lied with respect to the source of the $5,400 and the whereabouts of $30,000–plus. Such misrepresentations of fact are inherently obstructive in the context of criminal contempt proceedings, which must be proved beyond a reasonable doubt. *See United States v. Thoreen*, 653 F.2d 1332, 1340–41 (9th Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982) (making misrepresentations to the fact finder is inherently obstructive for the purpose of a criminal contempt finding because it frustrates the rational search for the truth). Thus, they are inherently obstructive for the purposes of a civil contempt finding, which must be proved by a lesser standard of clear and convincing evidence, which is certainly the case here. Therefore, the Court holds defendant in civil contempt.

B. *The Defendant Represented to the Court That it Would Pay Partial Restitution of $5,400 on February 27, 1986 and Then Failed to Comply With a Direct Order of the Court to Make Such Restitution*

The Court has the power to punish by fine or imprisonment such contempt of its

authority as disobedience of its order. 18 U.S.C. § 401(3).

The Court does not find defendant in contempt of its order of March 6, 1986 as defendant complied by appearing before this Court to show cause why he should not be held in contempt for failing to hand over the $5,400 on February 27, 1986. The Court does find, however, that defendant was in civil contempt for failing to pay partial restitution on that day in the amount of $5,400.

The Court's order of February 27th clearly stated that the defendant was to pay restitution in the amount of $62,500. All orders must be complied with promptly. *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975); *Jim Walter Resources, Inc. v. International Union, United Mine Workers*, 609 F.2d 165, 168 (5th Cir.1980). A person is in contempt when he fails to take all reasonable steps within his power to comply with the Court's order. *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146–47 (9th Cir. 1983). It is undisputed that defendant and his counsel represented to the Court that they possessed $5,400 which they were prepared to use immediately to pay towards partial restitution. (S 5, 17, 23, 36 & 48). It was, therefore, reasonable and within defendant's power to hand over the $5,400 immediately upon the February 27, 1986, sentencing, particularly since Mr. Halleck literally waved the money before the Court saying that defendant was prepared to pay restitution at least in that amount on that day.

## IV. SANCTIONS

■ The Court's power to impose sanctions for civil contempt are limited to compelling or coercing defendant to obey a Court Order and compensating the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *Shuffler*, 720 F.2d at 1147; *see also* Wright, *Federal Practice & Procedure*, Criminal 2d, § 704. The Court cannot, however, punish a defendant guilty of civil contempt for reasons not strictly related to these two purposes. In this case, the $5,400 has been paid into the Court's regis-

try. Thus, the defendant is no longer in contempt, and, the Court, therefore, need not impose any sanctions, at this time, to coerce the defendant to pay the $5,400. The Court will not impose sanctions in the form of imprisonment on defendant for obstructing the administration of justice and disobeying an order of the Court by not immediately paying the $5,400. The Court does not, however, make any findings regarding the balance of $57,100 as that issue was not before the Court. *See* Show Cause Order of Mar. 6, 1986.

## V. CONCLUSION

The Court hereby orders, for the reasons set forth above, that defendant is guilty of civil contempt, but finds that the sanctions within its power are not appropriate in this instance. The Court further orders that the $5,400, currently in the Court's registry, be paid to the Attorney General as stated in the Court's orders of February 27, 1986 and March 6, 1986.

## ORDER

The Court has before it the government's motion to hold defendant in civil contempt and defendant's opposition thereto. After careful and thorough consideration of the record in this case and the parties memoranda, it is, by the Court, this 22nd day of August, 1986,

ORDERED, that defendant is guilty of civil contempt for obstructing the administration of justice and disobeying an Order of the Court, and,

FURTHER ORDERED, that the $5,400 currently in the registry of the Court be paid to the Attorney General.

## SUPPLEMENTAL ORDER

On August 26, 1986, the Court had issued an Order directing that the $5400 currently in the Court registry be paid to the Attorney General, but had inadvertently failed to mention that the interest on this amount should also be paid to the Attorney General. To resolve the situation, the Court issues this supplemental Order. Accordingly, it is, by the Court is 27th day of August,

ORDERED, that the Court's prior Order of August 26, 1986 is supplemented, and, it is,

FURTHER ORDERED, that the interest on the $5400 currently in the registry of the Court be paid to the Attorney General for transmittal to the complaining witness, Ms. Joan Pierotti.